09-20470.rr

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20470 CR MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

EMMANUEL MAXIME, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

**This matter** is before this Court on the Defendant Emmanuel Maxime's Motion to Suppress Statement, filed May 3, 2010 (D.E. 132). The Court has reviewed the Motion, the Response, and all pertinent portions of the record. In addition, an evidentiary hearing was held on June 14, 2010 and the Court adopts the transcript of that hearing by reference.

## Facts

Defendant is charged in the superseding indictment with one count of conspiring with Dwight Carter, Erskaneshia Ritchie, and Nikkia Thomas to commit a robbery of a Dunbar Security guard, in violation of 18 U.S.C. § 1951(a), one count of committing said robbery, and one count of carrying and using a firearm in relation to a crime of violence which caused the death of a person in violation of 18 U.S.C. §924(c)(1)(A), which killing was defined as a murder pursuant to 18 U.S.C. §1111.

Defendant moves to suppress a statement made to Miami Dade Police detectives subsequent to his arrest on May 20, 2009.

**Discussion**

Defendant makes two arguments in support of his motion to suppress: (1) there was no probable cause for his arrest; and (2) Defendant's Miranda rights were not "scrupulously honored" during questioning.

**1. Probable Cause**

Defendant was arrested pursuant to an arrest warrant signed by United States Magistrate Judge Ted Bandstra on May 19, 2009. The complaint and affidavit in support of the warrant were signed by Miami Dade Police Detective Robert Christie. Defendant argues that the arrest warrant was not supported by probable cause, which is defined as "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

After examining the affidavit, the Court find that it contains probable cause to believe that Defendant conspired to, and did commit the robbery in question. To the extent that Defendant argues that the affidavit does not contain the full descriptions of the suspects as provided by each of the witnesses, and notes some discrepancies in the descriptions as provided by the witnesses, it is significant to note that the probable cause required for an arrest warrant is less stringent than the standard of proof beyond a reasonable doubt, which is required for a conviction. Probable cause is a "reasonable ground for belief of guilt," supported by more than mere suspicion, but less than prima facie proof. United States v. $242,484.00, 389 F.3d 1149 (11th Cir. 2004) (citation omitted).

The Court agrees that the affidavit contains a "gap" in information in paragraph 10, in that it does not explain exactly how Defendant and Dwight Carter were "subsequently identified as

suspects" based on the witnesses' descriptions.[1] However, the Court finds that the subsequent identification of Defendant's photograph by two eyewitnesses, as well as the surveillance and cellular phone evidence discussed in the complaint adequately provides the probable cause necessary to support the arrest. See, e.g., United States v. Burbridge, 252 F.3d 775, 778 (5th Cir. 2001) ("An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect."); Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2001) ("[W]e have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause."). Contrary to Defendant's assertion, the affidavit does contain information as to the reliability of the witnesses in that it discusses the vantage point from which the witness was able to observe the Defendant.

Defendant argues that Det. Christie's statement that Defendant was the person who was speaking on a cellular phone in and around the mall at the time of the robbery is "false" and that he is entitled to a "Franks hearing" pursuant to Franks v. Delaware, 438 U.S. 154, 171 (1978). Under Franks, Defendant may challenge the veracity of an affidavit in support of a warrant if he makes a "'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing Franks, 438 U.S. at 155-56).

The Court finds that Defendant has failed to make the necessary preliminary showing as to this statement. First, Defendant has not offered any evidence that the statement was false (i.e., that

---

[1] The affidavit reflects that because it "is being provided for the limited purpose of establishing probable cause, it does not contain every fact known to law enforcement regarding this investigation." ¶2.

he was not speaking on the phone at the pertinent time). Moreover, there is no showing that Det. Christie was reckless in his belief that Defendant was using the phone, because: (1) the phone was registered in Defendant's name (¶13) and (2) at least one eyewitness identified Defendant as the individual who was using a phone at the time the phone registered in Maxime's name was calling Dwight Carter.

Defendant also argues that Det. Christie's statement that cellular phone records corroborate the eyewitness statements that Defendant and Carter were in the area of Dadeland Mall at the time of the robbery are "false." Defendant argues that "all cellular phone records can show, ... is approximate location, rather than a precise location," phone records cannot show that it was Defendant who was speaking on the phone, and sometimes towers used to route calls can be "overflow" or "back-up" towers to a different location. Mot. p. 11. The Court finds that Det. Christie's statements regarding the corroboration by cellular phone records is not recklessly false, in that he also includes the following paragraph:

> As a general rule, when a cellular telephone receives or places a call, that cellular [telephone] uses the closest unobstructed cell site tower. Thus, by analyzing the towers used by a subject's telephone, investigators can identify the approximate geographic area that the cellular telephone was operating at the time the phone received or placed a call ... during the 20 minute period before the robbery ... CARTER and MAXIME spoke multiple times while using cellular telephone towers that cover the Dadeland mall area.

¶¶12-14. The use of the terms "general" and "approximate" adequately qualify the language to as to make it not "false."

Moreover, even if either of these two statement could be considered to be false, if they are removed from the affidavit, the remaining eyewitness descriptions are sufficient to establish probable cause, as discussed above. Accordingly, the Court therefore finds that Defendant is not entitled to

a Franks hearing.

## II. Violation of Miranda Rights

The only witness who testified concerning statements made by Defendant was Miami Dade Police Detective Stefano Brajdic, who was present at Defendant's arrest outside of Zariah Guyton's apartment at 7:33 a.m. on May 20, 2009.

Det. Brajdic testified that after he was arrested, Defendant was taken to an interview room in the Miami Dade Police homicide department, where he was uncuffed, and given coffee and an opportunity to use the restroom. Det. Brajdic and another detective began interviewing Defendant at 8:15 a.m. Det. Brajdic advised Defendant that he was under arrest for armed robbery and murder and took some biographical information from Defendant, who stated that he was a 2004 graduate of Carol City High School and had been attending American Intercontinental University for four years, where he was a criminal justice major. Defendant stated that he could read and write English, was not under the influence of any illegal narcotics and did not suffer from any mental illness.[2] According to Det. Brajdic, Defendant appeared to be lucid and to understand what was being said.

Approximately seven to eight minutes into the discussion, Det. Brajdic advised Defendant of his Miranda[3] rights by having Defendant read them aloud from a form, and explain his understanding of each right after it was read. In addition to Defendant orally reading and waiving his rights, Defendant additionally memorialized his waiver of his rights by initialing and signing a Miranda rights waiver form at 8:58 a.m..

After Defendant had waived his rights, Det. Brajdic advised Defendant of the evidence that law enforcement had gathered against him, including photo lineups, identification information,

---

[2] Defendant did state that he took medicine for high blood pressure.

[3] Miranda v. Arizona, 384 U.S. 436, 479 (1966).

surveillance photos and cell phone tracking information. Defendant reacted by stating "I don't want to look at that." At approximately 9:50 a.m., Defendant indicated that he wanted to use the restroom and was allowed to do so, returning to the room at 9:55 a.m.. The interview continued from 9:58 a.m. to 10:35 a.m., during which time the detectives told Defendant that the other individuals involved in the robbery were also at the station, and Defendant asked the detectives to "prove it." The detectives then left the interview room and returned at 11:00 a.m. and advised Defendant that the other individuals were in the process of being interviewed. At that point, Defendant stated that he wanted a lawyer. The detectives immediately ceased questioning the Defendant, and advised him that the interview was over and that the detectives would go finish necessary paperwork. At 11:05 a.m., the detectives left the room and Defendant was told to knock on the door if he needed anything.

At approximately 11:15 a.m., Defendant knocked on the door and said that he needed the restroom, and the detectives returned to the interview room and escorted Defendant to the restroom. When they returned to the interview room at 11:20 a.m., Defendant stated that he had changed his mind and would resume the interview, but wanted to speak to Zariah Guyton first. Det. Brajdic reminded Defendant that he had requested counsel and the interview had been terminated, but Defendant again indicated that he had changed his mind and wanted to see Guyton. Det. Brajdic told Defendant that Guyton was in the process of giving a statement, and provided Defendant with a cheeseburger meal.

At 1:37 p.m., Guyton finished giving her statement and was brought to the interview room to meet with Defendant, while Det. Brajdic observed. Guyton told Defendant: "You know we're all here... they know... don't make it hard on yourself."

After giving Defendant and Guyton a couple of minutes together, both detectives returned to the interview room and told Defendant that Guyton had told them that Defendant had spent the

proceeds on jewelry for his daughter. Defendant then began a confession which lasted from 1:40 p.m. through 2:35 p.m.. A stenographer was called, and at 3:36 p.m. Defendant gave a statement which was taken down by the stenographer and was audio and video recorded. Prior to Defendant beginning the statement, Det. Brajdic again read Defendant his Miranda rights and had Defendant explain their meaning. Defendant verbally waived his rights again. Defendant also verbally confirmed that he had previously asked for a lawyer but had changed his mind and wanted to make a statement.

After the statement was taken, Defendant was given an opportunity to read it and make corrections or deletions. Defendant did so and signed the statement. During the entire interview process, Defendant never complained of any coercion or mistreatment.

Based on this testimony, the Court finds no basis for suppression of the statement. A post-arrest confession is admissible if the requirements of Miranda are met and the defendant voluntarily waives his rights and provides a statement. See, e.g., United States v. Jones, 32 F.3d 1512, 1516-17 (11th Cir. 1994). The evidence is uncontroverted that Defendant was read his Miranda rights twice - once at 11:00 a.m., and once at 3:36 p.m. He knowingly and intelligently waived those rights prior to the beginning of the initial interview. Although Defendant did invoke his right to counsel at one point in the interview, at that point all questioning ceased. It was not until Defendant indicated that he wanted to continue the interview without counsel that the questioning continued. Because Defendant himself, without any prompting from the detectives, re-initiated the interview, the detectives were constitutionally allowed to continue talking to him. See Henderson v. Dugger, 925 F.2d 1309, 1314 (11th Cir. 1991); Moore v. Dugger, 856 F.2d 129, 133 (1988).[4]

---

[4]The Court rejects Defendant's contention that Michigan v. Mosley, 423 U.S. 96 (1975) dictates that another detective should have performed the continued questioning. In Mosely, more than two hours after a defendant invoked his right to remain silent after being questioned about a

The Court rejects Defendant's argument that Defendant only gave a statement because his will was overborne. Defendant offered no evidence in support of this contention. In addition to hearing the testimony regarding Defendant's waiver from Det. Brajdic, whom this Court finds to be a credible witness, the Court viewed a portion of the video and audio taped statement which included the second reading of the Miranda warnings, and therefore had the opportunity to observe Defendant's demeanor at that time. Defendant, a college student, appeared to be calm and able to understand his rights and what was happening. He further appeared to be willing to cooperate.

Defendant cites the fact that he was arrested by a SWAT team at 7:33 a.m., and was at the homicide department until 4:58 p.m., with no control over the events which were occurring. Although Defendant argues that he had no "control" over what was happening to him, the testimony was uncontroverted that the detectives were very accommodating to Defendant's needs, giving him breaks whenever he requested them, providing him with food and drink, and even providing him with an opportunity to speak with Guyton. Moreover, during the twenty minute period during which Defendant changed his mind about speaking, there was no action which was taken by law enforcement to coerce or pressure Defendant. Finally, a significant period of time (approximately two hours) elapsed between the time that Defendant advised the detectives that he wanted to continue the interview if he could talk to Guyton first, and the time that he actually did continue speaking. Thus, Defendant had ample time to reconsider his decision and was not acting under compulsion.

Under all of the circumstances, the Court finds that Defendant was properly advised of his rights, not once, but twice, and that his waiver of his rights was knowing, intelligent and voluntary.

---

robbery, a different agent initiated questioning of the defendant regarding an unrelated homicide. In finding that the defendant's "right to cut off questioning" was fully respected, the Court found it significant that another officer performed the second questioning. 423 U.S. at 104. Mosely is clearly distinguishable, in that it deals with the situation where law enforcement, as opposed to the defendant, reinitiates questioning.

## Recommendation

Accordingly, this Court respectfully recommends that the Motion to Suppress Statement be **DENIED**.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 22nd day of June, 2010 at Miami, Florida.

STEPHEN T. BROWN
CHIEF U.S. MAGISTRATE JUDGE

cc:   Honorable Jose E. Martinez
      counsel of record